815 So.2d 738 (2002)
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Petitioner,
v.
Victor Lee PITTS, Respondent.
No. 1D01-3196.
District Court of Appeal of Florida, First District.
May 2, 2002.
Rehearing Denied May 31, 2002.
*739 Enoch J. Whitney, General Counsel and Judson M. Chapman, Assistant General Counsel, Tallahassee, for Petitioner.
David M. Robbins and Susan Z. Cohen of Epstein & Robbins, Jacksonville, for Respondent.
VAN NORTWICK, J.
By a petition for writ of certiorari, the Department of Highway Safety and Motor Vehicles seeks review of a decision of the circuit court which granted certiorari relief to Victor Lee Pitts. After finding that Pitts was not accorded procedural due process in the administrative hearing in which he challenged the suspension of his license for driving with an unlawful alcohol level, the circuit court granted the petition for writ of certiorari, quashed the final administrative order and reinstated Pitts' driving privilege. Because the circuit court's decision applied the correct law, we deny the Department's petition.

Factual and Procedural Background
On February 17, 2001, Deputy T.J. Brown of the Clay County Sheriff's Office was dispatched to a cul-de-sac at the end of Caleb Court, where he found Pitts standing by a car that was stuck in a ditch. Fire rescue personnel were already on the scene and advised Deputy Brown that they found Pitts in the car in the ditch. Deputy Brown, who is a DUI enforcement officer, smelled alcohol on Pitts' breath and asked Pitts if he had been drinking. Pitts answered "yes." Deputy Brown asked Pitts to undergo field sobriety tests and Pitts refused. Deputy Brown observed that Pitts' movements were slow and sluggish while he was in the ditch, but that once Pitts climbed out of the ditch, he was steady on his feet. The deputy reported that Pitts' face was pale, his eyes watery and slightly bloodshot, and his speech was "fair." Deputy Brown arrested Pitts. After the arrest, the deputy found a cooler of nonalcoholic beer in Pitts' vehicle. He subsequently admitted at the administrative hearing that non-alcoholic beer does have an odor similar to alcohol.
At the police station, a licensed intoxilyzer operator twice administered a breath test. The tests indicated that Pitts had an alcohol level of .134 and .125. Pitts' license was suspended for driving with an unlawful alcohol level. He requested a formal administrative hearing which was *740 held before a hearing officer employed by the Department.
Prior to the hearing, Pitts obtained a subpoena duces tecum directing Deputy Brown to produce the videotape recording of the stop and arrest. At the hearing, Deputy Brown testified that he did not bring the videotape because he does not activate his recording device when the suspect refuses to perform the sobriety tests. Nonetheless, he acknowledged that even though he calls it a "no video" when a driver refuses to do the roadside tests, it was conceivable that a recording of his encounter with Pitts could exist. He testified that, if a video recording existed, it would appear on a tape turned in at approximately the same time as the Pitts arrest.
The hearing officer recognized that defense counsel was entitled to inquire concerning why the encounter was not videoed and, if a tape was available, that the tape should be produced. Nevertheless, the hearing officer ruled that, if counsel wanted to determine whether a videotape actually existed, counsel could attempt to locate the videotape. Counsel then attempted to question Deputy Brown concerning the identity of the arrest made closest to the Pitts arrest, so that counsel could locate the video of that arrest to determine if it contained all or part of the roadside encounter between Deputy Brown and Pitts. The hearing officer prevented this line of questioning, however, by requiring counsel to move on to another subject.
At another point in the hearing, Pitts' counsel questioned Deputy Brown about his decision not to inquire about what Pitts was drinking. Counsel asked the deputy whether it would have made a difference if Pitts had informed him he had been drinking non-alcoholic beer and had showed the deputy the cooler. The hearing officer interrupted and instructed the deputy not to answer the question because it was not relevant. Then, when counsel began to inquire of Deputy Brown concerning Pitts' appearance at the scene, the hearing officer stopped the examination, ruled that the questioning was irrelevant, and instructed counsel to "move on."
When counsel asked the deputy what he had intended when he described Mr. Pitts' speech as "fair" in his report, the deputy testified that he could not remember why he marked "fair." Later, the hearing officer pursued questioning on this subject, asking Deputy Brown if "fair" meant "it just wasn't sharp and crisp." The deputy responded "right." The hearing officer also asked the deputy about the condition of the accident scene, posing questions on evidence which had not been introduced, and established for the record that there were no obstructions at the location where Pitts ran off the road which would have prevented Pitts from successfully negotiating a turn within the cul-de-sac.
When the officer who administered the intoxilyzer was called, counsel for Pitts inquired about the circumstances surrounding the administration of the breath test, at one point inquiring how the officer had advised Mr. Pitts about implied consent. This questioning was stopped by the hearing officer, however, who informed counsel that such evidence would not be relevant because "this is a blow, not a refusal."
At the conclusion of the hearing, counsel moved to disqualify the hearing officer and the motion was denied.[1] Thereafter, the *741 hearing officer entered a final order upholding the license suspension.
Pursuant to section 322.2615(13), Florida Statutes (2000), Pitts sought certiorari review in the circuit court. Before the circuit court, Pitts argued that he had the right to impeach Deputy Brown's determination of probable cause, to examine Deputy Brown on his basis for determining that probable cause existed, and to examine the intoxilyzer operator as to the information given Pitts about implied consent. See State v. Polak, 598 So.2d 150 (Fla. 1st DCA 1992)(breath test results which are obtained pursuant to the implied consent statute, but which are procured based on misinformation, are not voluntary and are not admissible). Pitts asserted that the hearing officer's curtailment of these rights was a denial of procedural due process and that the hearing officer's questioning had not been limited to clarifying evidence, but rather constituted an effort to elicit new evidence which supported the license suspension. He contended that the hearing officer abdicated her role as a neutral and impartial arbiter of the facts and, in effect, became an advocate for the Department.
In an opinion, the circuit court granted certiorari relief, reasoning, in part, as follows:
This court finds that the hearing officer did not adequately allow Petitioner's counsel to fully examine witnesses, and inappropriately advised witnesses not to answer questions by Petitioner's counsel in violation of Petitioner's procedural due process rights. During the hearing, the hearing officer frequently demanded Petitioner's counsel to "move on" despite the fact that counsel had not exhausted his questioning of witnesses on particular issues. The hearing officer's numerous interjections, and the barring of witness testimony by the hearing officer, denied Petitioner a fair and impartial hearing.
By interposing objections, and severely limiting the scope of direct examination of witnesses, the hearing officer did not leave an "impression of impartiality." Love v. State, 569 So.2d 807, 810 (Fla. 1st DCA 1990)("[a] judge must not only be impartial, he must leave the impression of impartiality upon all those who attend court."). The hearing officer over-extended herself as fact finder in extensively questioning witnesses, in addition to actually answering questions for the witnesses. Courts have recognized that "[e]xtensive participation of the trial judge, such as by excessive questioning of witnesses, may amount to usurping the functions of counsel and be an abuse of the discretion and latitude of the court in such respects, with resultant injury to the rights of a party ..." Bumby & Stimpson, Inc. v. Peninsula Utilities Corp., 169 So.2d 499, 501 (Fla. 3d DCA 1964). This court finds that the hearing officer below abused her discretion when she participated to the point of interposing objections to relevancy and instructing witnesses not to answer questions.
(Citations to the record omitted).

Section 322.2615, Florida Statutes
Under section 322.2615, Florida Statutes (2000), a law enforcement officer is required to take the driver's license of a person who has been arrested for violating section 316.193 for driving with an unlawful breath alcohol level and to issue that person a 30 day temporary permit. § 322.2615(1)(a), Fla. Stat. (2000). Thereafter, a notice of suspension issues informing the driver of his violation. § 322.2615(1)(b). Within five days after the arrest, the law enforcement officer is required to forward to the Department a *742 copy of the notice of suspension; the driver's license of the person arrested; the report of the arrest, which includes an affidavit of the officer's grounds for believing that the person was driving under the influence of alcohol; the results of any breath or blood test or an affidavit stating that such test was requested but refused by the driver; and the officer's description of the driver's performance on a field sobriety test, if any. Id. The officer may also submit a copy of any videotape of the field sobriety test or the attempt to administer such test. § 322.2615(2). The person arrested may request an informal or formal review. § 322.2615(4)(5). If a formal review is requested, the Department must schedule a hearing within thirty days after the request is received. § 322.2615(6)(a).
The formal hearing must be held before a hearing officer who "shall be authorized to administer oaths, examine witnesses and take testimony, receive relevant evidence, issue subpoenas, regulate the course and conduct of the hearing, and make a ruling on the suspension." § 322.2615(6)(b). Under the Department's rules, "[t]he driver shall have the right to present evidence relevant to the issues, to cross-examine opposing witnesses, to impeach any witness, and to rebut the evidence presented against the driver." Rule 15A-6.013(5), Fla. Admin. Code. The hearing officer will have available and consider all the written documents and reports generated by law enforcement. Rule 15A-6.013(2)(a)-(k), Fla. Admin. Code.
In the case of a suspension for driving with an unlawful alcohol level (in contrast to a suspension for refusal to submit to a breath, blood or urine test), the review is limited to the following issues: (1) whether the arresting officer had probable cause when arresting the driver; (2) whether the driver was placed under lawful arrest; and (3) whether the driver had an unlawful blood alcohol level. § 316.2615(7)(a); see also Fla. Admin. Code Rule 15A-6.013(7)(a). The hearing officer's determination, which must be based upon a preponderance of the evidence, can be made based upon the written documents and reports submitted by law enforcement. § 322.2615(11); see Department of Highway Safety v. Dean, 662 So.2d 371, 372 (Fla. 5th DCA 1995).

Scope of Certiorari Review
The circuit court's certiorari review of the final order of the Department is limited to determining (1) whether procedural due process was accorded the licensee; (2) whether the essential requirements of the law were observed; and (3) whether the administrative findings and judgment were supported by competent substantial evidence. See Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995). In reviewing the final order of the circuit court acting in its review capacity, the district court of appeal is limited to determining whether the circuit court afforded procedural due process and whether it applied the correct law. Id. "A decision made according to the form of the law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as applied to the facts, is not an illegal or irregular act or proceeding remedial by certiorari." Id. at 525(quoting Basnet v. City of Jacksonville, 18 Fla. 523, 526-27 (1882)).
Certiorari is not a vehicle to allow a second appeal. Stilson v. Allstate Ins. Co., 692 So.2d 979, 982 (Fla. 2d DCA 1997), quoted with approval in Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla. 2000). This court cannot review the circuit court's decision and reach a different result simply because it is not satisfied with the result reached by the circuit court. Ivey, 774 So.2d at 683. We are constrained to look at whether the circuit *743 court's decision amounted to a denial of procedural due process, application of the incorrect law, or a miscarriage of justice.

Issues and Analysis
It is the Department's contention that the hearing officer acted within the scope of her authority in examining the witnesses and limiting the examination of witnesses on relevancy grounds, and that the circuit court, in granting certiorari review, improperly substituted its decision and misapplied the law in ruling otherwise. The Department asserts that the evidence sought to be introduced by defense counsel was not relevant, because it did not pertain to any of the issues provided in section 322.2615(7)(a), and, therefore, the hearing officer did not fail to accord procedural due process when she limited the testimony of the witnesses. The Department argues that the administrative hearing before the hearing officer is a limited one and does not accord a litigant the full range of litigation rights. Reviewing the facts, the Department argues that the rulings by the hearing officer did not rise to the level of a denial of fundamental due process.
Pitts agrees that the hearing officer has the right to question witnesses, regulate the course and conduct of the hearing, receive evidence relevant to the issues, and determine the weight, relevance and credibility of evidence. Pitts argues, however, that the hearing officer is not to act in the dual role of a prosecutor and judge and that such a role conflicts with his right to a fair and impartial hearing accorded him under requirements of procedural due process. As to what constitutes relevant evidence in a hearing under section 322.2615, Pitts notes that "relevant evidence" is "evidence which tends to prove or disprove a material fact." Rule 15A-6.013(6), Florida Administrative Code (emphasis supplied). Thus, notwithstanding the Department's assertions to the contrary, relevant evidence is not just evidence that tends to support the license suspension. Pitts submits that he was entitled to present any available evidence that would impeach, rebut, or call into question the evidence submitted on behalf of the Department.
It is without question that the "suspension of a driver's license for statutorily defined cause implicates a protectible property interest." Mackey v. Montrym, 443 U.S. 1, 10, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). This is a substantial private interest and due process applies to its denial. Id. at 10-11, 99 S.Ct. 2612. While combining the fact-seeking and judicial functions in the same office does not per se violate due process, see State v. Johnson, 345 So.2d 1069 (Fla.1977), "[a]n impartial decisionmaker is a basic constituent of minimum due process." Ridgewood Props., Inc. v. Dep't of Cmty. Affairs, 562 So.2d 322, 323 (Fla.1990), quoting Megill v. Board of Regents, 541 F.2d 1073, 1079 (5th Cir.1976); see generally, Charles Stampelos, The Administrative Process and Constitutional Principles, Florida Administrative Practice § 1.37 (The Florida Bar CLE 6th Ed.2001). Although the statutory driver's license suspension procedures "meet the requirements of due process and are facially valid," Department of Highway Safety and Motor Vehicles v. Stewart, 625 So.2d 123, 124 (Fla. 5th DCA 1993), if, under the facts of a particular case, a suspendee's rights have not been respected, the suspendee may be entitled to relief. Id.; see also Withrow v. Larkin, 421 U.S. 35, 58, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)("That the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before *744 it that the risk of unfairness is intolerably high.").
The circuit court below determined that the hearing officer departed from her role as a neutral and detached magistrate and failed to preserve the impression of impartiality to which Pitts was entitled. Ducre v. State, 768 So.2d 1159 (Fla. 2d DCA 2000)("Whether appearing before a hearing officer or the court, a litigant should have the same confidence in the impartiality of the fact-finder"). While certainly the hearing officer may question witnesses to clear up the evidence, the hearing officer must nonetheless remain neutral and detached and she departs from that position of neutrality when she elicits evidence that the Department itself never submitted for consideration. See J.F. v. State, 718 So.2d 251, 252 (Fla. 4th DCA 1998).
A central issue raised in the review was whether Deputy Brown had probable cause to arrest Pitts. See § 316.2615(7)(a). As this court has explained:
probable cause sufficient to justify an arrest exists "where the facts and circumstances, as analyzed from the officer's knowledge, special training and practical experience, and of which he has reasonably trustworthy information, are sufficient in themselves for a reasonable man to reach the conclusion that an offense has been committed."
Dep't of Highway Safety and Motor Vehicles v. Favino, 667 So.2d 305, 309 (Fla. 1st DCA 1995)(quoting City of Jacksonville v. Alexander, 487 So.2d 1144, 1146 (Fla. 1st DCA 1986)). Thus, Pitts had a right to elicit relevant evidence on the facts and circumstances surrounding the arrest, so that the hearing officer could determine whether the arresting officer had sufficient and reasonably trustworthy information to reach the conclusion that Pitts was driving a vehicle under the influence of alcohol. Id.; see also § 322.2615(7)(a). Although the hearing officer has the discretion to control the orderly process of the administrative hearing, when that discretion is abused and results in a denial of procedural due process, the circuit court may grant relief.
In this case, the circuit court granting certiorari relief applied the correct law governing procedural due process. Even if we disagreed with the circuit court's application of the law to the facts, we would have no basis to intervene and grant certiorari relief. See Ivey, 774 So.2d at 683. In urging us to conclude that the hearing officer's conduct did not rise to the level of a denial of fundamental due process, the Department is doing nothing more than asking us to second-guess the circuit court-which we do not possess the authority to do. Id.
Finally, we do not address the Department's argument that, even if an evidentiary error was made in the administrative hearing, the proper remedy was for the circuit court to remand for further proceedings. See Lillyman v. Dep't of Highway Safety and Motor Vehicles, 645 So.2d 113 (Fla. 5th DCA 1994). The Department failed to raise this argument in the proceeding below and, thus, has not preserved it for appellate review. See Sun Ray Homes, Inc. v. County of Dade, 166 So.2d 827 (Fla. 3d DCA 1964).
The petition for writ of certiorari is DENIED.
ERVIN and LEWIS, JJ., CONCUR.
NOTES
[1] Rule 15A-6.008(1), Florida Administrative Code, requires a motion for recusal to be made "prior to the start of the hearing" and "be accompanied by a written statement stating particular grounds for which a hearing officer may be recused."